Whitaker, Judge,
delivered the opinion of the court:
On September 5,1947, plaintiff was convicted by a general court martial and dismissed from the Navy. He alleges that the court martial was without jurisdiction to try him, and that his dismissal was, therefore, unlawful, and, hence, he sues for his pay which his dismissal denied him.
The basis of his claim is that between the time of the alleged commission of the offenses for which he was convicted and his conviction thereof, he had been out of the Navy and in a civilian status, and, hence, he says the court martial did not have jurisdiction to try him under the rule of United States ex rel. Hirshberg v. Cooke, Commanding Officer, 336 U. S. 210.
This contention is without merit, as a brief recitation of the facts will show.
At the time the offense was committed plaintiff had the permanent rating in the Navy of Chief Shipfitter, and held the temporary rank of Lieutenant. Prior to the commission of the offense, plaintiff had requested a permanent commission as Chief Carpenter. On September 13, 1946, he was appointed to this position subject to passing a satisfactory physical examination and the acceptance of the commission. On October 1,1946, he was examined by the Senior Medical Officer and found physically qualified, and on that date he took the oath of office as Chief Carpenter. He retained his temporary rank as Lieutenant until some time thereafter. Having been appointed to the commissioned rank of Chief Carpenter on October 1,1946, plaintiff’s status as an enlisted man, with the permanent rating of Chief Shipfitter, was terminated on September 30, 1946. Both while holding the permanent rating of Chief Shipfitter and as Chief Carpenter plaintiff retained the temporary rank of Lieutenant.
*557 It is thus obvious that plaintiff never reverted to civilian status. He was at all times in the Navy and subject to Navy discipline. The rule of United States ex rel. Hirshberg v. Cooke, Commanding Officer, supra, is therefore, inapplicable.
On October 2, 1946, plaintiff was paid mustering-out pay in the sum of $300.00. However, plaintiff, as an enlisted man, was entitled to this mustering-out pay under the amendment to the Mustering-Out Payment Act of 1944, effected by the Act of October 6, 1945 (59 Stat. 540), which provided that enlisted men were entitled to mustering-out pay on reenlistment or on appointment in the Eegular Military or Naval Establishment. They were entitled to it whether or not they had left the service.
Plaintiff’s petition is dismissed.
Madden, Judge; Littleton, Judge; and Jones, Chief Judge, concur.
findings of fact
The Court having considered the evidence, the,report of Commissioner W. Ney Evans, and the briefs and argument of counsel, makes findings of fact as follows:
1. Plaintiff is a citizen of the United States. He was dismissed from the Navy on September 5, 1947, after trial and conviction by a general court martial. At thé time of his trial, conviction, and dismissal, plaintiff was a commissioned officer, holding the permanent rank of Chief Carpenter and the temporary rank of Lieutenant. At the time of the offenses of which plaintiff was convicted, he was an enlisted man with the permanent rating of Chief Shipfitter, holding a temporary commission and serving as a Lieutenant.
2. An enlisted man in the United States Naval Service agrees to serve for a specific length of time, at the end of which his enlistment normally terminates,'unless, as in the instant situation, the period of enlistment is extended by law. An officer in the United States Naval Service so serves by reason of appointment by the President or the Secretary of the Navy in accordance with such statutory authority as Congress may provide. He usually agrees to serve not for a fixed period of time but rather during the pleasure of the appointing authority. With the advent of Public Law 188, *558 77th Cong., approved July 24,1941 (55 Stat. 603), and pursuant thereto, the Navy appointed certain enlisted personnel, including the plaintiff, to temporary officership, thus clothing-such individuals with a dual status of permanent enlistment and temporary officership.
In actual practice, the Department of the Navy handles officer and enlisted personnel records separately. A man with a permanent enlisted status and a temporary officer’s status, such as the plaintiff had prior to October 1, 1946, would thus have, during the period of his dual status, both an officer file and an enlisted file. Upon acceptance of a permanent commission as an officer, the enlisted status of such an individual is considered by the Department of the Navy as terminated. For administrative purposes, the Navy closes the enlisted record by an appropriate entry which is dated as of the day preceding the oath and acceptance of the permanent commission.
3. On April 15, 1946, plaintiff, an enlisted man since November 9, 1926, and the holder of a temporary commission as Lieutenant, requested (1) that he “be retained on active duty in commissioned status * * * until 1 July 1947, or longer,” and (2) that he be transferred to permanent rank as Chief Carpenter. At that time he had completed 19 years and 5 months in the service, of which the last 2 years and 4 months had been in temporary commissioned status.
4. In a letter described as Navy Bupers Circular Letter 207-46, dated September 13, 1946, issued pursuant to Public Law 347, 79th Cong., approved April 18,1946 (60 Stat. 92), the President appointed the plaintiff, among others similarly situated, a Chief Carpenter, United States Navy, permanent appointment, subject to the fulfillment of the conditions set forth in an earlier Navy Bupers Circular Letter identified as No. 123-46, dated May 28, 1946. The pertinent conditions attached to the appointment of the plaintiff herein were that he first be found physically qualified by an appropriate physical examination and that he then accept the commission and take an oath of office.
It was provided in plaintiff’s letter of appointment to Chief Carpenter, lowest commissioned officer rank in the Service, *559 that conditioned upon his acceptance thereof and effective from the date of such acceptance and oath of office, his temporary commissioned rank of Lieutenant should continue with the same precedence as held at the time of appointment. Thereby, plaintiff’s status as an officer was not terminated. He had had officer status as Lieutenant (temporary) in the United States Navy since January 26, 1946. He accepted a permanent officer status, namely, Chief Carpenter, on October 1,1946.
5. Appropriate entries were made in plaintiff’s records showing the termination of his temporary commission, his reversion to enlisted man, and the termination of his enlistment by honorable discharge for the convenience of the Government. The entries were dated September 30, 1946. Although the usual practice in the Navy was to make the entries after the transfer as of the day before, it is not established by the evidence that the entries in this instance were not made on the day of their date. It is fair to conclude from the evidence as a whole that plaintiff’s superior officers elected, for reasons not explained by the evidence, to terminate plaintiff’s enlistment on one day, and to swear him in as a commissioned officer on the next day.
6. At the time of reporting to his superior officers on September 30, 1946, plaintiff received no certificate or other written evidence of the action taken. It was Navy policy at the time not to issue certificates of discharge upon the termination of enlistments where arrangements had been made for the men to continue in the service, by reenlistment or by transfer to commissioned rank.
On April 4, 1951, plaintiff made formal application to the Navy for a certificate of discharge, and on April 19,1951, the Navy issued and forwarded to plaintiff a certificate of Honorable Discharge “from the Naval Service of the United States this 30th day of September 1946.” This certificate was issued by the enlisted men’s record branch, which had no knowledge of plaintiff’s status as an officer after September 30, 1946. As of September 30, 1946, certificates of discharge were not issued to commissioned officers upon their release from the service.
*560 7. On October 1,1946, the Commanding Officer of the base requested the Senior Medical Officer to give a physical examination to the “named officer” [plaintiff] “relative to appointment in the Regular Navy as a Chief Carpenter * * Plaintiff was found physically qualified, and thereafter, on the same day, October 1, 1946, he took the oath as Chief Carpenter. Appropriate entries were made in his records showing the oath as Chief Carpenter and the restoration of his temporary commission as Lieutenant to rank from January 26,1946. These entries were dated October 1, 1946. There is no evidence to suggest that they were not made on the day of their date.
8. On October 2, 1946, plaintiff received mustering-out pay in the sum of $300.
9. On November 22, 1946, plaintiff requested that he “be retained in commissioned status. until 30 June 1948 or longer.”
10. Thereafter, charges were preferred against plaintiff under Articles 8 and 22 for the Government of the Navy. Plaintiff was tried by a general court martial on March 6, 1947. He was found not guilty on one specification, and guilty on two. The findings of the court were that the acts of which plaintiff was found guilty were committed on June 20, 1946, and July 10, 1946. Plaintiff was sentenced (a) to be dismissed from the Navy, (b) to lose $500 pay, and (c) to be confined at hard labor for two years. The sentences of fine and imprisonment were later remitted. Dismissal from the Navy was made on September 5,1947.
11. Plaintiff has exhausted his administrative remedies. He has received no pay or allowances from the Navy since September 5, 1947. Since that time he has been able and willing to perform the duties of a Lieutenant in the Navy if permitted to do so. At the time of his dismissal, plaintiff’s base pay was $4,290 per annum, plus yearly allowances of $1,260 for rental and $776.50 for subsistence. Since his dismissal his income from employment has included (a) $1,500 in 1947 and 1948; (b) $1,916 in 1949; (c) $5,034.57 in 1950; and $5,000 in 1951.
*561 CONCLUSION OP LAW
Upon tbe foregoing special findings of fact, which are made a part of the judgment herein, the Court concludes that as a matter of law the plaintiff is not entitled to recover, and his petition is therefore dismissed.