*878 Opinion

per curiam:

In our former decision in this case, 126 C. Cls. 558, we concluded that the case had to be referred to a commissioner of this court for the trial of certain unresolved issues of fact. The only one of those issues which was dependent on oral testimony was the question of how many hours, on the average, did the plaintiff work on Sundays while he was a section foreman. Our commissioner has concluded, on the basis of evidence which is by no means conclusive, that the plaintiff, on the average, worked about six hours on Sundays. We think that is as fair an approximation as can be deduced from the evidence, and we adopt it.
For the reasons given in Samples, et al., No. 48637, Anderson, et al., No. 48891, and Beebe, et al., No. 49891, v. United States, decided this day ante, p. 548, no recovery is allowed for the additional straight-time pay to which the plaintiff would have been entitled under section 23 of the act of March 28, 1934.
The plaintiff is entitled to a judgment for $2,126.23.
It is so ordered.
FINDINGS OF FACT
The court, having considered the evidence, the report of Commissioner Eichard Hi Akers, and the briefs and argument of counsel, makes the following findings of fact:
• 1. This case was previously submitted to the court on plaintiff’s motion for summary judgment. In its decision of November 3, 1953, 126 C. Cls. 553, the court said:
The plaintiff has made a motion for a summary judgment. He says that, as to the issue of liability, his case is governed by our decisions in the Poggas. and Parmenter cases, supra [118 C. Cls. 385, and 125 C. Cls. 35]. In this he is correct, and we adhere to our decisions in those cases. The question is, then, how much overtime the plaintiff worked and what was his regular rate of pay at the time the overtime was worked. The plaintiff says that on this point there is no genuine issue as to any material fact, and that he is, therefore, entitled to a summary judgment for $4,440.78.
*879 The computation upon which the plaintiff’s claim to $4,440.78 is based, was made by the plaintiff’s attorney from data contained in a report furnished him by the Government. A copy of this report is attached to the plaintiff’s motion as Exhibit 2. The plaintiff, in his computation, treated this report as showing that he worked seven eight-hour days per. week and thus had sixteen hours of overtime each week. But the report itself says that the payroll records showing that , the plaintiff worked every day in the month were made that way because the plaintiff was paid a monthly salary. It says that in fact the plaintiff worked only six days per week.
The plaintiff reminds us that in the Poggas case, supra, it was shown that section foremen, such as the plaintiff was, were required to patrol their sections of the track on Sunday. We did so find, but we did not find that they in all cases devoted a full eight-hour day to doing so.
There are unresolved genuine issues as to material facts as to the extent of the Government’s liability. The case must be referred to a commissioner of this court for the trial of those issues.
2. The plaintiff was employed by The Alaska Bailroad as a section foreman in the maintenance-of-way department on January 8, 1939, at a monthly salary of $181.50. He worked during that month from the 8th through the 22nd, and from the 27th through the 31st, a total of 19 days. During the month of February, 1939, he worked from the 1st through the 10th, and from the 17th through the 28th, at a monthly rate of $187.91; he was on leave without pay from February 11 through February 16. He worked the entire month of March, the first three days at a monthly rate of $192.50, and the balance of the month at a monthly rate of $203.50. He also worked the entire month of April at a monthly rate of $203.50 on the first four days, and a monthly rate of $181.50 for the balance of the month. During May, 1939, he worked the first 27 days of the month at a monthly rate of $181.50, and was on leave without pay *880 from May 28 through. June 2; during the period from May 9 through May 18, he was on annual leave. During the month of June 1939, he was on leave without pay on the 1st, 2nd, 12th, and 16th, worked at a monthly rate of $181.50 from the 6th through the 11th, and worked for 136 hours as a section laborer at an hourly rate of 64 cents during the balance of the month. He was on leave without pay on July 1 and 2, 1939, and thereafter worked regularly as a section foreman at a monthly rate of $181.50 through January 1941; during this period he took annual leave from March 2 to, March 4, 1940, and again went on annual leave on January 15,1941, continuing in this status to February 25,1941, when he went on leave without pay through April 15, 1941. Returning to The Alaska Railroad on April 16,1941, he worked as a section foreman at a monthly rate of $181.50 through June 22, 1941, when he became an acting roadmaster at a monthly rate of $275. Except for the short period referred to above when he was a section laborer, the plaintiff was a section foreman for all periods he worked from January 8, 1939, through June 22,1941. His title changed to assistant roadmaster on August 1, 1941, and to roadmaster on September 1, 1941, but his rate of pay remained unchanged through September 30,1941, when it was increased to $297.50. It was increased to $300 a month on January 1,1942, and to $330 a month on April 1, 1943. During this latter period the plaintiff was on sick leave from March 5 through March 8, from May 13 through June 2, and from June 17 through June 29, 1942.
Subsequent to May 1, 1943, and continuing at least until March 31, 1948, the plaintiff continued his employment as roadmaster. He was paid overtime compensation under the provisions of the War Overtime Pay Act of 1943, and subsequent to July 1, 1945, he was paid overtime compensation under the provisions of the Federal Employees Pay Act of 1945.
The plaintiff’s payment record from January 8, 1939, to March 31,1948, is summarized as follows:

*881

3. The general wage schedules in effect on The Alaska Bailroad during the period from May 1, 1929, to April 30, 1943, for section foremen, roadmasters, and laborers in the maintenance-of-way department provided the following rates:

As shown in the preceding finding, when the plaintiff entered the employment of The Alaska Bailroad as a section foreman on January 8, 1939, he received a monthly *882 salary of $181.50. That amount was 10 percent in excess of the minimum basic wage for section foremen under Wage Schedule No. 12 in effect on June 1, 1932, and March 28, 1934. Such 10 percent increase was in accordance with a general increase of that amount given to the employees of The Alaska Bailroad, effective July 1, 1938, which was incorporated in Wage Schedule No. 14, effective July 1, 1939.
4. By General Circular No. 470 of The Alaska Bailroad dated December 31, 1941, wages of nonoperating employees, with certain minor exceptions, were increased $25 a month, effective January 1, 1942.
These increases were made to correspond to an increase which the employees of the railroads in continental United States had received plus the cost of living differential. However, the increases granted to these latter employees were effective September 1, 1941, whereas the Comptroller General had held that, in the absence of specific statutory authority, an administrative retroactive increase in the wages of government employees could not he made. In order to give to the employees of The Alaska Bailroad an increase for the period September 1 to December 31, 1941, similar to that granted to employees on railroads in the continental United States, a bill was introduced in the 77th Congress which was enacted as Public Law No. 825, approved December 22, 1942. Under that statute the plaintiff received $22.50 for each of the months for the period September 1 to December 31, 1941, in addition to his monthly salary for that period of $275, that is, in effect a rate of pay for those four months of $297.50, as shown in finding 2. The increase of $25 a month, effective January 1,1942, referred to above, was an increase over the minimum basic pay provided in Wage Schedule No. 14 without considering the legislative increase just referred to, that is, the plaintiff’s basic pay was increased from $275 to $300 a month.
5. The regular hours of labor in effect for section foremen of The Alaska Bailroad prior to May 1,1943, and including the period of the plaintiff’s service prior to that time, were eight hours, a day, six days a week, thus constituting an administrative workweek of forty-eight hours. During the *883 same period such, employees were paid on the basis of a calendar month of thirty days, regardless of the number of days in the month.
As a section foreman or other employee prior to May 1, 1943, the plaintiff was never paid for any overtime work in excess of eight hours a day; nor was he paid, during such period, for work on Sundays or holidays, other than as pay for such days was included in the salary for the calendar month.
6. One of the duties of a section foreman was to keep a daily time record of himself and the men in his gang. Some of the regulations under which the section foremen performed these duties for the period here involved read as follows:
Method of Recording Time — Pocket Time Book
23. The time of employees must be taken personally by the Foreman at least once each day and entered in a pocket time book, which every Foreman must have.

Time Rolls

14. Monthly employees must be shown on Time Boll as working on the 31st day of all months containing 31 days, under heading marked “Time actually employed each day”, but is totaled as 30 days (not 31 days). If any monthly employee is not shown as working on the 31st day of a 31 day month, they will be paid for 29 days only for that month’s work.

Computing Amou/nts Due Monthly Employees

38. For the purpose of computing pay of monthly employees, each and every month shall be held to consist of thirty days, without regard to the actual number of days in the month, thus excluding the 31st day of any month from the computation and treating the month of February as if it actually had 30 days.
39. In computing pay for the fractional part of a month where service has been performed therein by two or more persons holding the same office or place, one-thirtieth of one month’s compensation shall be the rate for each day of service, except for the thirty-first day for which nothing can be paid.

Overtime

36. A detailed statement covering reasons for overtime must be submitted with each time roll, when overtime has been worked, as follows:
*884 (A) Names of all employees required or permitted to work more than eight hours in any one calendar day.
(B) Amount of overtime per day each employee was required or permitted to work in excess of eight hours in any one calendar day.
(C) A complete statement setting forth the extraordinary emergency which existed.
This certificate must be certified by the official in direct charge of the work.
87. Employees on monthly pay are allowed no extra pay for overtime, Sunday or Holiday work, unless authorized by the General Manager. Employees on hourly rates will be given straight time for Sundays, Holidays and time in excess of eight hours.
In the case of the section foreman himself, a check mark of some kind was usually shown by him for each day of the week, including Sundays and holidays, indicating when he was on duty, that is, not in a leave status on that day, but no attempt was made to show how many hours he actually worked each day, week, or month. On the basis of the time books kept by him, the section foreman submitted a time roll which formed the basis on which the payroll was prepared for the section laborers as well as the section foreman. The time books as prepared by the plaintiff were not available for introduction into evidence. The time records of The Alaska Railroad at no time contained adequate information from which it could be determined the number of hours per day, week, or month a section foreman worked.
7. The Rules and Regulations of the Transportation Department of The Alaska Railroad issued May 1, 1918, contained, among others, various rules applicable to section foremen, including the following:
551. They must inspect the main track on their sections or districts at least once during each twenty-four hours, either by sending a competent track-walker over it or by running over same with a hand car, keeping a close watch for broken rails, spread track and all other defective conditions of track, culverts, trestles and bridges, which might endanger passing trains.
The foregoing rule was in effect throughout the period involved in this proceeding. It was adapted from a similar rule in effect on the Southern Pacific Railroad.
*885 8. The chief engineer of The Alaska Railroad, with the approval of the general manager, from time to time issued maintenance-of-way circulars to section foremen calling attention to the rules relating to the patrolling of tracks. Three of such circulars read as follows:
Maintenace-of-Way Circular No. 442, dated March 14, 1984:
Subject: Track Patrol.
To all Section Foremen:
All foremen should at this time exercise exceptional diligence in patrolling the sections. Patrols on train days should be made as closely in advance of trains as can safely be done.
This is the time of the year when snow slides, mud slides, and sloughs are most liable to occur and we do not want any accidents to trains, because of them.
Maintenance-of-Way Circular No. 458, dated November 8, 1934:
Subject: Patrolling Track.
To All Section Foremen:
During a recent investigation a Section Foreman testified that he did not, nor did he have a Trackwalker inspect his section more than an average of once a week. Such a practice is in direct violation of existing rules.
In the winter time when snow conditions are such that motor cars cannot be operated, and except in territories where snow and mud slides exist, or where snow drifts and other unsafe conditions may exist, a daily inspection is not necessary, but such inspection must be made each day trains are operated and before trains move over their respective sections.
Your attention is invited to Rule #551 which covers the point in question, and you will please be governed accordingly.
Maintenance-of-Way Circular No. 703, dated December 12,1944:
Subject: Patrolling Tracks.
To All Section Foremen:
Track must be patrolled each day. Some foremen are apparently under the impression that Sundays and holidays are excepted. This is definitely not the case.
During the winter and early spring, an early morning-patrol is necessary, that in case of snowslides, trains may be held at terminals.
*886 There is always the possibility of rock slides, glaciers, and broken rails, which, if unprotected, may cause serious derailments.
9. During the period involved in this proceeding, a section foreman had charge of a crew of one to eight men and with this crew he was responsible for the repair and maintenance of rails, ties, and roadbed within his section. One of his duties was to keep track and roadbed free from obstructions and threat of obstructions and at all times in condition for the safe passage of trains. In performing these duties he was required, as shown above, under Rule 551 of The Alaska Railroad, to patrol the section of track assigned to him at least once during each twenty-four hours, including Sundays and holidays, or have it patrolled by one of his section men. Since section men were allowed pay at the monthly rate in addition to their monthly salary (or compensatory time off) for such work on Sundays or holidays, and since The Alaska Railroad did not look with favor on additional pay of that nature, the section foreman usually performed the patrol work on such days rather than delegating it to a member of the crew, though at times, particularly when using the gas car, the section foreman would have a member of the crew assist him in this work. In addition, members of the section crew were often inexperienced in work of this kind. In . the summer, a section crew, in addition to the section foreman, usually consisted of from four to eight men and in the winter from one to three men, summer being referred to in such connection as the period from April 15 to October 15 and winter as the remainder of the year. Except for emergency or patrol work, the members of the crew did not work on Sundays or holidays.
During each patrol, the section foreman inspected for rock slides and snow slides, broken rails, and other defects in the track. He lived in quarters furnished by The Alaska Railroad at a section house on the section assigned to him and he was required to remain in the neighborhood of his section on call at all times unless he arranged specially with his superiors otherwise. A section was usually from eight to ten miles in length. It usually took longer to patrol a *887 section in the winter than in the summer. Section foremen patrolled their sections in any one of three ways depending upon weather conditions and other factors, namely, by gas car, velocipede, or on foot. The time required to patrol the section by gas car, assuming no unusual conditions were encountered that required the section foreman to make emergency repairs or remove obstructions, was from one to four hours; whereas by velocipede, which was a hand-operated piece of equipment, it was from three to six hours. Patrolling on foot was not ordinarily done except under extreme weather conditions where a gas car or velocipede could not be used and would require eight to twelve hours or even longer under unusual conditions. Ordinarily when a gas car was used, the section foreman took a section laborer with him to help in handling the car, but the velocipede could be handled by the section foreman without assistance.
In addition to patrolling the track on Sundays and holidays in the manner above indicated, the section foremen on occasions on those days performed some work around the section house such as cleaning and repairing tools, preparing reports and scheduling work to be carried out during the succeeding days of that week.
10. The usual practice of The Alaska Eailroad was for the dispatcher to call the section foremen each morning of the week, including Sunday morning, about 7:15 and give them the train lineup for the day, that is, the trains that were scheduled to pass over the various sections during that day and at or about what time. However, the section foremen were charged with the duty of patrolling their tracks each day without regard to whether a train was scheduled for that day or whether the trains came at the time scheduled.
Throughout the period involved in this proceeding as well as both prior and subsequent thereto, there was some irregularity in the operation of trains on The Alaska Eail-road. Due to weather conditions, more trains were operated in the summer than during the winter. At all times there were days when trains did not operate over a given section, including Sundays, but trains did operate on occasions on *888 Sundays. During at least a part of tbe period involved in this proceeding, there were only four regularly assigned operating road crews on The Alaska Railroad from about October until April. One freight crew operated a train from Fairbanks to Curry and return each week in addition to performing switching at the Centrana Mine. A second freight crew operated a train from Seward to Curry and return each week and performed switching at Seward. A third crew operated the passenger train from Anchorage to Fairbanks and return each week, and performed switching at Fairbanks. A fourth crew operated a passenger train each week from Anchorage south, making one round trip between Anchorage and Seward and one trip from Anchorage to Jonesville and return over the Matenuska Branch, in addition to performing certain switching services at Anchorage. The schedules of the trains from Anchorage to Seward were adjusted to conform with the actual arrival of vessels at Seward.
In addition to the above four regularly assigned crews, there were snow train crews which operated over the line when required by weather conditions; and additional extra trains were operated as required by traffic conditions. There were occasions when weather conditions during the winter became so severe that train operations were greatly impeded or even were stopped, and where the snow train, the passenger train, and the freight train would operate one behind the other in the order stated.
11. As heretofore shown, no time records were kept from which a determination can be made as to the number of hours per day or per week a section foreman worked. However, on the evidence presented, the parties are in substantial agreement on all time worked by the plaintiff as a section foreman from January 8, 1989, to April 30, 1943, inclusive, except as to time worked on Sundays and holidays in patrolling the track and other work on those days, as heretofore described. A reasonable conclusion from the evidence is that on such days when engaged in the performance of his duties as section foreman from January 8,1939, to April 30, 1943, the plaintiff worked on the average six hours per day; and that when on duty for an entire week of seven days dur *889 ing that period, the plaintiff worked an average of fifty-four hours.
12. The plaintiff was paid regularly on a straight-time basis for a calendar month of thirty days. The following tabulation contains the current monthly rates paid with conversions to hourly rates applicable thereto, the overtime rates at one and one-half of the adjusted hourly rates computed on a forty-hour week, the hours employed in excess of forty hours a week, and the additional amounts earned on such overtime:

By applying the $22.50 per month increase authorized by the Act of December 22,1942, to the overtime worked during the period September 1 to December 81, 1941, the plaintiff is entitled to an additional overtime payment of $13.'T4.
CONCLUSION OK LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes that as a matter of law the plaintiff is entitled to recover, and it is therefore adjudged and ordered that he recover of and from the United States two thousand one hundred twenty-six dollars and twenty-three cents ($2,126.23).