**Robert Charles DOWLING**

v.

**The UNITED STATES.**

No. 174-60.

United States Court of Claims.

Feb. 7, 1962.

Rehearing Denied April 4, 1962.

Robert C. Dowling, pro se.

Charles M. Munnecke, Washington, D. C., with whom was Asst. Atty. Gen., William H. Orrick, Jr., for defendant.

1. The Act was repealed by 72 Stat. 1273, § 14(101), but existing rights of action were saved. 72 Stat. 1268. Similar provisions are now contained in 38 U.S.C. § 2101.

REED, Justice (Ret.), sitting by designation.

Plaintiff, a captain in the Regular United States Air Force, seeks to recover mustering-out pay pursuant to the Veterans' Readjustment Assistance Act of 1952, 66 Stat. 688, § 501(a), which provided in pertinent part that:

"each member of the Armed Forces who shall have been engaged in active service on or after June 27, 1950, * * * and who is discharged or relieved from active service under honorable conditions, shall be eligible to receive mustering-out payment." [1]

The question is whether Dowling was "discharged or relieved from active service" in 1954 when, while on active duty, his status as a Reserve officer was terminated and he was appointed an officer in the Regular Air Force.

The primary aim of the mustering-out payments was set forth in the declaration of principle contained in § 102 of that Act.* It indicated that:

"the home, farm, and business-loan benefits, the unemployment compensation benefits, the mustering out payments, and the employment assistance provided for by this Act are for the purpose of assisting in the readjustment of such persons from military to civilian life." 66 Stat. 663.

We conclude, however, that this Act was also designed to encourage the veteran, whose tour of duty was at an end, to remain in the armed services. This clearly appears from an examination of section 502(b) ** which governs here and which provided the times at which each eligible veteran should receive the designated sums. They were to be paid "at the time of final discharge or ultimate relief from active service, or at the option of the person so eligible, *at the*

* Now 38 U.S.C.A. § 1601(c).

** Now 38 U.S.C.A. § 2102.

*time of discharge or release for the purpose of* enlistment, reenlistment, or *appointment in a regular component of the Armed Forces."* [Emphasis supplied.] This option clause first appeared as 59 Stat. 540 (1945) and was part of an act with the declared purpose of stimulating "volunteer enlistments in the Regular Military and Naval Establishments of the United States." It was felt that a provision which did not make final discharge a condition precedent to payment would counteract any temptation to leave the service which any such condition might create. See 91 Cong.Rec. 8626; see also H.R.Rep.No.943, 79th Cong., 1st Sess. 7; S.Rep.No.589, 79th Cong., 1st Sess. 7. The objectives of the World War II act were also embodied in the Korean War counterpart. H.R.Rep.No. 1943, 82d Cong., 2d Sess. 42. In Shelton v. United States, 126 Ct.Cl. 555 (1953), we indicated that the option clause "provided that enlisted men were entitled to mustering-out pay on reenlistment or on appointment in the Regular Military or Naval Establishment." Id. 126 Ct.Cl. at 557.

The committee reports accompanying the World War II provision stated that the option clause "does not enlarge the number of persons who are eligible to receive the mustering-out payments now authorized * * * but merely accelerates the time when such payments may be made." H.R.Rep.No.943, 79th Cong., 1st Sess. 7; S.Rep.No.589, 79th Cong., 1st Sess. 7. This was not entirely true in 1945, nor is it true now, if Dowling's position is correct. These statutes have always prohibited payments to commissioned officers who leave the service more than a certain period after the termination of hostilities.[2] Section 501 (b) (7) of the 1952 Act provided that no payment was to be made to

"any commissioned officer unless he is discharged or relieved from active service within three years after such date as shall be determined by Presidential proclamation or concurrent resolution of the Congress; * *."[3]

An appropriate proclamation was issued on February 1, 1955. 69 Stat. c18, § 6 (b). Thus, if the plaintiff was not entitled to the payments in 1954, he will never receive them.

Dowling was commissioned as a second lieutenant in the Air Force Reserve on August 4, 1950. On the following September 29th he was ordered to active duty and appointed a temporary officer (without component) in the Air Force of the United States.[4] However, his commission as a Reserve officer was not terminated. Of course, even if this Reserve status had ceased at that time, Dowling would not have been entitled to a mustering-out payment since he had not, as yet, served on active duty in the Korean war. In 1954 he was appointed an officer in the Regular Air Force, he accepted the same, and his Reserve commission was terminated. The order which accomplished this applied not only to the plaintiff but to many officers who were

---

2. The World War II act provided that no payment was to be made to "any commissioned officer unless he is discharged or relieved from active service within three years after the termination of the present war * * *." 58 Stat. 8, 9.

3. The purpose of such prohibitions was, apparently, to deny the benefit to persons above the rank of Captain. See 90 Cong. Rec. 344.

4. Plaintiff's appointment was pursuant to 61 Stat. 795, 907, § 515, which provides in part:

"(e) In time of emergency declared by the President, or by the Congress, and in time of war, the President is authorized to appoint qualified persons (including persons who hold no Regular Army or Reserve status) as temporary officers in the Army of the United States in any of the several commissioned officer grades, and persons so appointed may be ordered into the active military service of the United States to serve therein for such periods of time as the President may prescribe. The appointment of a temporary officer, if not sooner vacated, shall continue during the emergency or war in which the appointment was made and for six months thereafter."

only members of the Reserve. It read in part:

"By direction of the President, announcement is made of the appointment of the following named individuals in the Regular Air Force in the grade and with date of rank indicated, * * *. An Officer accepting appointment who is serving in a grade higher than his Regular Air Force grade, will retain the higher grade. Individuals are appointed and ordered to active duty in the USAF commensurate with the grade determined in accordance with the above effective on the date of acceptance of this appointment and are assigned to present organization and station. No travel involved. Air Force Reserve Commissions are vacated on the day prior. * * * " [As paraphrased by the plaintiff.]

Dowling was issued a new serial number and was required to take a new oath of office.

Subsequently, the Air Force paid him, and other officers similarly situated, $300., purportedly pursuant to the Veterans' Readjustment Assistance Act of 1952. In 1956 and 1957 the Comptroller-General of the United States ruled that payment to officers in the plaintiff's position were improper and that the amounts would be recouped from their pay. In this manner the Government has recovered the $300. However, those reserve officers who did not hold such temporary commissions were, under the rulings of the Comptroller General, entitled to the payment upon their integration into the Regular Air Force.

In our view this case should not turn on the question of whether there was a "break" in the plaintiff's military service. Rather our attention should be directed to determining the probable purpose of Congress. Plaintiff suggests that the United States wished to encourage officers to accept Regular commissions in lieu of Reserve status by providing for the payment of mustering-out benefits on the occurrence of that event.

We agree. The acceptance of such a commission is, of course, voluntary. Although such action on the part of the officer would not affect his military obligation to the United States,[5] it does imply the choice of a military career. If Dowling had decided to retain his Reserve commission, his temporary appointment would eventually have been terminated, and he would have been released from active duty. This ordinarily would have entitled him to mustering-out pay. On the other hand, if he chose the Regular commission, he would remain active until the commission was terminated or he resigned. In effect, Dowling was faced with the choice of accepting an inactive Reserve status or continuing on active duty. As the legislative history of the option clause makes clear, Congress did not want to deter officers from taking the latter course by denying them mustering-out pay. We hold therefore that the sum of $300. was properly paid to the plaintiff in 1954 and that it was improperly recouped from his pay in 1959.

The defendant's motion for summary judgment is denied; plaintiff's like motion is granted. Plaintiff is entitled to recover from the United States the sum of three hundred dollars ($300.00) and judgment for that amount will be entered.

It is so ordered.

JONES, Chief Judge, and DURFEE, LARAMORE and WHITAKER, Judges, concur.

---

5. Under the Air Force Regulations in effect at the date of plaintiff's appointment, an Air Force officer was, subject to certain exceptions, free to resign his commission if he so desired. Air Force Reg. #36–12, Feb. 28, 1952; repealed effective March 22, 1954.